# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW HAMPSHIRE

NATASHA DELIMA,

      Plaintiff,

      v.

YOUTUBE, INC. ET AL.,

      Defendants.

Civil No. 17-CV-733-PB

Google LLC, Twitter, Inc., and
  YouTube, LLC's Memorandum of
  Points and Authorities in Support of
  Joint Motion to Dismiss or, in the
  Alternative, to Transfer Venue

**MEMORANDUM IN SUPPORT OF DEFENDANTS GOOGLE LLC, TWITTER, INC.,
AND YOUTUBE, LLC's MOTION TO DISMISS OR, ALTERNATIVELY, TRANSFER**

## I.    INTRODUCTION

Plaintiff Natasha DeLima ("Plaintiff") has filed a putative class action complaint against six technology companies, including Google LLC ("Google"), Twitter, Inc. ("Twitter"), and YouTube, LLC ("YouTube") (collectively, "Defendants"). Google is known for its search engine and services such as Gmail and Drive, as well as the online blogging service Blogger.[1] Twitter is an online platform that allows people to share and find short messages called "Tweets" and subscribe to follow other people's Tweets. YouTube is a video creation, hosting, and sharing platform where account holders can create channels and display videos to subscribers and others.

Plaintiff purports to be a Google, Twitter, and YouTube account holder. Her claims are unclear, but she appears to allege that (1) Google deleted her blogs on Blogspot, (2) Twitter locked her out of two accounts, and (3) YouTube has not paid her and has hidden millions of views and thousands of subscribers from her videos and channel. *See* Dkt. 1 ¶¶ 8, 12, 15, 22.

None of Plaintiff's claims are legally viable. Most are not even valid causes of action, and Plaintiff does not and cannot allege facts to support a single cause of action against Defendants. In addition, any claims arising out of Defendants' exercise of editorial discretion are barred by the Communications Decency Act, 47 U.S.C. § 230 ("CDA") and the First Amendment to the U.S. Constitution. Even under the forgiving standards applied to pro se litigants, Plaintiff's claims cannot survive and the defects cannot be cured, so the claims should be dismissed with prejudice.

Alternatively, if the Complaint is not dismissed entirely, this action should be transferred to the Northern District of California pursuant to the forum selection clauses in the applicable terms of service governing the conduct alleged in Plaintiff's Complaint.

---

[1] Plaintiff named as a defendant Blogspot.com, which is owned by Google and used with its service Blogger. As its owner, Google responds to the allegations as to Blogspot.com.

1

## II.     BACKGROUND

### A.     Plaintiff's Complaint and Allegations

Plaintiff filed her Complaint on December 21, 2017, Dkt. 1, purportedly on behalf of a class of plaintiffs across the country and worldwide. *See* Dkt. 1 ¶ 30. She and the class "are seeking 1 Billion dollars in damages." *Id*. ¶ 24. Of its 31 paragraphs, seven sentences set out the entirety of the allegations specific to Plaintiff and directed at the Defendants:

- **Google**: "Blogspot.com, powered by Google, deleted the Plaintiff and her partner's blogs …. Over the 2017 Thanksgiving holiday, this blog, and this personal email were deleted from the internet, for no reason." *Id*. ¶ 16.

- **Twitter:** "Twitter closes accounts that do not violate anything, or do anything wrong, over the Thanksgiving holiday, when the Plaintiff was not even on twitter, she returned home to be locked out of 2 of my twitter accounts … ." *Id*. ¶ 8.

- **YouTube:** "YouTube has offered advertiser revenue to channel subscribers, based on so many cents per view. YouTube does not disclose to 'channel partners' how much they do in fact receive per advertisement, so channel subscribers are unaware how much they actually earn or are actually due. YouTube pays about .1 cent per add or $10.00 per $100,000 views, the Plaintiff was told …. YouTube has not paid that money to lead Plaintiff …." *Id*. ¶ 12. Further, "ON the Plaintiff's channel, [YouTube] hide[s] millions of views, and many thousand subscribers." *Id*. ¶ 22.

The rest of Plaintiff's Complaint addresses other defendants or makes non-specific allegations.[2]

---

[2] *See, e.g.*, *id.* ¶¶ 3 (asserting that "[t]hese websites have destroyed 'free speech'" by closing and tampering with accounts); 4 (asserting that "Twitter[] and YouTube conspired to rig the election" and "targeted people for their political views"); 6 ("All of these websites are out of control, violating civil rights, federal laws, & using the sites to target individuals."); 8 ("Twitter has deleted accounts, including that of Milo Yiannopoulos. . . . Twitter []and YouTube have tampered with this site's popularity, and rights to access all parts of the internet. Twitter is deleting tweets that simply contain news . . . ."); 9 ("YouTube shut down channels, based on true news."); 10 (asserting that YouTube "deleted channels" and that Twitter "delet[ed] the President's Twitter account, Roseanne Barr's [T]witter

It is unclear what claims Plaintiff is bringing, but the unnumbered introductory paragraph on the Complaint's first page suggest that she is asserting:

> Consolidated Plaintiff's Lawsuit For Violations of Civil Rights Act, 1964, Election Rigging, Partner Compensation (YouTube & Patreon), First Amendment Rights, Censorship, Illicit Shadow banning of Information, Cyberbullying, Copyright Infringement Chapter 5, Illicit Monitoring, Unmasking, Defamation, NIED Negligent Infliction Of Emotional Distress

*See* Dkt. 1.

**B.     Procedural History**

On December 21, 2017, Plaintiff filed her Complaint and two motions: (1) a Motion to Stay Twitter's Unlawful Proposal To "Spy" "Monitor" & "Censor" Subscribers On & Off Usage of the The Website = Twitter and (2) a Motion to Consolidate Federal Rule 42. Dkts. 1, 3-4. On January 25, 2018, Plaintiff filed four more motions (1) a Motion for Google, Twitter, Facebook, YouTube & Patreon's Contempt of Executive Order, (2) a Request that the Court Order YouTube to Pay the Plaintiff, (3) a Motion for Restoration of YouTube Accounts & Termination Of YouTube Illicit Demonetization, and (4) a Motion to Order Twitter to Adhere to Executive Order & Federal Laws, & To Cease Hacking, Shutting Down, Closing, Limiting, and Targeting Particular Site Users that Operate within the Law. *See* Dkts. 5-8.

On March 14, 2018, the Court conducted a preliminary review of the Complaint and directed Defendants to file a responsive pleading, as well as respond if necessary to Plaintiff's motions at Dkts. 3-8, within 21 days of service. Twitter was served on April 6, 2018, and filed an assented-to motion to extend its response deadline until Google and YouTube were served,

---

account, and many others"); 15 ("YouTube ... has 'deleted' videos on people's sites."); 26 ("All websites 1 year after the 2016 election, continue to tamper in politics, erase true news, & tamper, hinder, & hide links to real data, & they intent to interfere in the 2018 and 2020 elections as they have been for the past year.").

whichever was later. *See* Dkt. 22. The Court granted that motion on April 27, 2018. Google was served on April 24, 2018. *See* Dkt. 31. YouTube was served on May 3, 2018.

Defendants now move to dismiss or, alternatively, transfer Plaintiff's claims.

### III.    ARGUMENT

**A.    Legal Standard on a Motion to Dismiss**

**1.    Sufficiency of Factual Allegations**

To state a claim, Plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). This requires Plaintiff to plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*; *see also Tringali v. Mass. Dep't of Transitional Assistance*, No. 12-cv-124-PB, 2012 WL 5683236, at *4 (D.N.H. Nov. 13, 2012) (dismissing pro se plaintiff's claims because "she has not pleaded sufficient facts" in support). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

**2.    Standards for Pro Se Pleadings and Litigation**

Pro se complaints receive a "deferential reading" but "a court is not required 'to swallow the plaintiff's invective hook, line, and sinker; bald assertions, unsupportable conclusions, periphrastic circumlocutions and the like need not be credited.'" *Hecking v. Barger*, No. 08-cv-490-JL, 2010 WL 653553, at *1 (D.N.H. Feb. 23, 2010) (quoting *Aulson v. Blanchard*, 83 F.3d 1, 3 (1st Cir. 1996)). Further, "pro se status does not insulate a party from complying with procedural and substantive law." *Ahmed v. Rosenblatt*, 118 F.3d 886, 890 (1st Cir. 1997).

On this Motion, only Plaintiff's individual claims are at issue because a pro se plaintiff "will be allowed to appear before this court only on their own behalf," Local Rule 83.2(d), and cannot represent a class. *See Avery v. Powell*, 695 F. Supp. 632, 643 (D.N.H. 1988) (holding that a pro se plaintiff lacks "the knowledge and experience necessary to protect the interests of the class as required by Rule 23(a)(4)"); *Lee v. New Hampshire*, No. 13-cv-215-SM, 2013 WL 5348222, at *1 (D.N.H. Sept. 23, 2013) ("As a pro se plaintiff, however, Lee cannot represent a class of plaintiffs."); 7A Fed. Prac. & Proc. Civ. § 1769.1 (3d ed.) (noting that "class representatives cannot appear pro se") (citations omitted).

Lastly, courts can dismiss a pro se complaint with prejudice, even *sua sponte*, "[w]here the allegations in the complaint, viewed in the light most favorable to plaintiff, 'are patently meritless and beyond all hope of redemption,' i.e., where it is 'crystal clear that the plaintiff cannot prevail and that amending the complaint would be futile[.]'" *Green v. Concord Baptist Church*, 313 Fed. App'x. 335, 336 (1st Cir. 2009). This is appropriate where the "claims based on indisputably bogus legal theories or delusional factual scenarios." *Id.*; *see also Every v. Dep't of Veterans Affairs*, No. 15-cv-177-LM, 2016 WL 107947, at *1 (D.N.H. Jan. 8, 2016) (dismissing pro se complaint and explaining that "[t]he central problem with [the] complaint is that there are insufficient facts to piece together any sort of coherent narrative").

**B.      Plaintiff Fails to Adequately Allege Any Viable Claims.**

Plaintiff's claims fall into eight categories: (1) civil rights; (2) election rigging; (3) First Amendment, including censorship; (4) "Illicit Shadow banning of Information," "cyberbullying," "illicit monitoring" and "unmasking,"; (5) defamation; (6) negligent infliction of emotional distress; and against YouTube only (7) copyright infringement and (8) a claim for "partner

compensation." None of these categories contain any legally viable causes of action. Plaintiff's complaint therefore fails as a matter of law and should be dismissed with prejudice.[3]

### 1.    The Court Should Dismiss Plaintiff's Civil Rights Act Claim

Plaintiff claims that her "civil rights" are at issue, and her claims include "Violations of Civil Rights Act" and "discrimination." Dkt. 1 ¶¶ 3, 28. Plaintiff does not, however, identify which provision of the Civil Rights Act she claims was violated or allege any facts to support her claims, and the Court should not try to discern what her claims might be. *See Hernandez-Santos v. Administracion de Correccion*, No. 09-cv-1816 DRD, 2011 WL 1260061, at *2 (D.P.R. Mar. 29, 2011) ("Although Plaintiff is proceeding *pro se*, a court should "not make inferences nor assume nor even try to imagine what Plaintiff would have perhaps alleged against these defendants, [because] it can not enter into such a guessing game.").

Plaintiff has not explained how Google or Twitter, by taking down her blogs on Blogger or locking her out of two Twitter accounts, or YouTube by not paying her or hiding views and subscribers, either violated the law or the Constitution, or discriminated against her. Further, to the extent these claims require a showing of state action, Plaintiff has not made that showing. *See Casterlow-Bey v. Google Internet Search Engine Co.*, No. 17-cv-05621-RBLJRC, 2017 WL 6876215, at *1 (W.D. Wash. Sept. 26, 2017), *report and recommendation adopted*, No. 17-cv-05621-RBLJRC, 2017 WL 6882978 (W.D. Wash. Oct. 23, 2017) ("Google is not a state actor and so is not liable under § 1983" of the Civil Rights Act). These claims are baseless, and they should be dismissed with prejudice. *See Jayne v. Google Internet Search Engine Founders*, No. 07-cv-1677, 2007 WL 2852383, at *1 and n.4 (M.D. Pa. Sept. 27, 2007), *aff'd*, 263 Fed. App'x.

---

[3] Although the scope of Plaintiff's claims is not entirely clear, this Motion attempts to address all claims Plaintiff appears to have asserted. To the extent this Motion fails to address any claims not recognized by Defendants, they reserve the right to respond to such causes of action.

268 (3d Cir. 2008) (dismissing with prejudice a Civil Rights Act claim against Google because "[t]here is no valid assertion that [Google's actions are] somehow a violation of the law or the Constitution" and "any amendment would be futile").

  2.      **The Court Should Dismiss Plaintiff's "Election Rigging" Claim.**

Plaintiff claims that Defendants "rigged" and "tampered" with the 2016 election, and are trying to do the same with the 2018 and 2020 elections. *See* Dkt. 1 ¶¶ 4, 7, 15, 26. Plaintiff cites no basis for this claim and, indeed, no private cause of action for "election rigging" exists. Second, Plaintiff's complaints are that her blogs were removed, she was locked out of her accounts, she was not paid, or her views or subscribers were hidden from her. There is no apparent connection between these limited factual allegations and rigging elections. This claim presents no viable legal theory or actual facts, and it should be dismissed with prejudice. *See Concord Baptist Church*, 313 Fed. App'x. at 336 (observing that courts should dismiss "claims based on indisputably bogus legal theories or delusional factual scenarios").

  3.      **The Court Should Dismiss Plaintiff's Constitutional Claims, Including for "First Amendment Rights" and Censorship.**

Plaintiff's claims for violations of constitutional rights, Dkt. 1 ¶¶ 3, 6, 16, 25, including for violations of her First Amendment rights and censorship, fail because there is no state action.

"[T]he constitutional guarantee of free speech is a guarantee only against abridgment by government, federal or state." *Hudgens v. N.L.R.B.*, 424 U.S. 507, 513 (1976); *see also Barr v. Camelot Forest Conservation Ass'n, Inc.*, 153 F. App'x 860, 862 (3d Cir. 2005) ("The First Amendment prohibits governmental, not private, infringement of free speech.") (citing *Hudgens*, 424 U.S. at 507); *DeBauche v. Trani*, 191 F.3d 499, 510 (4th Cir. 1999) ("[T]he constitutional protections of free speech and equal protection apply only against governmental action, and not against private action . . . ."). The circumstances where a private party and a government are so

7

intertwined that private conduct is "state action" for constitutional purposes are limited to a few circumstances, none of which apply here. *See Edmonson v. Leesville Concrete Co.*, 500 U.S. 614, 620 (1991); *Andrews v. Fed. Home Loan Bank of Atlanta*, 998 F.2d 214, 217 (4th Cir. 1993). Indeed, for a private party's conduct to be state action, there must be so much encouragement or coercion by the government that "the choice must in law be deemed to be that of the State." *Blum v. Yaretsky*, 457 U.S. 991, 1004 (1982) (citations omitted). The test is whether "it can be said that the State is *responsible* for the specific conduct of which the plaintiff complains." *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Assoc.*, 531 U.S. 288, 295 (2011) (quoting *Blum*, 457 U.S. at 1004) (emphasis in original).

In the online context, courts have uniformly rejected that Google, Twitter, YouTube, or an internet company can be a state actor. *See, e.g.*, *Howard v Am. Online, Inc.*, 208 F.3d 741, 754 (9th Cir. 2000) (finding that AOL was not subject to the First Amendment); *Green v. Am. Online (AOL)*, 318 F.3d 465, 472 (3d Cir. 2003) (same); *Langdon v. Google, Inc.*, 474 F. Supp. 2d 622, 631-32 (D. Del. 2007) (holding that Google is not subject to First Amendment); *Prager Univ. v. Google LLC*, No. 17-cv-06064-LHK, 2018 WL 1471939, at *8 (N.D. Cal. Mar. 26, 2018) ("[C]ourts have declined to treat . . . private social media corporations [similar to Google], as well as online service providers, as state actors[.]"); *Casterlow-Bey*, 2017 WL 6876215, at *1 (holding that Google "is not a state actor"); *Young v. Facebook, Inc.*, No. 10-cv-03579-JF/PVT, 2010 WL 4269304, at *3 (N.D. Cal. Oct. 25, 2010) (holding that Facebook is not a state actor).

Plaintiff does not—and cannot—allege that any of Defendants' conduct occurred at the behest of a state or federal government, let alone that there was sufficient coercion or cooperation to constitute state action. These causes of action should be dismissed; and because Defendants cannot be state actors, the dismissal should be with prejudice.

**4.      The Court Should Dismiss Plaintiff's "Illicit Shadow Banning of Information," "Cyberbullying," "Illicit Monitoring," and "Unmasking" Claims.**

Plaintiff complains generally about "illicit shadow banning of information," "cyberbullying," "illicit monitoring," and "unmasking." *See* Dkt. 1 ¶¶ 3, 4, 7, 28. These are not causes of action and Plaintiff does not allege any facts in support regardless, particularly where her only allegations against Defendants are that they took down her blog, locked her out of two accounts, did not pay her, or were hiding views or subscribers from her YouTube channel. The Court should dismiss these nonexistent and baseless claims with prejudice.

**5.      The Court Should Dismiss Plaintiff's Defamation Claim.**

Defamation has two elements. First, a defendant, either intentionally or negligently, communicates defamatory material. *McCarthy v. Manchester Police Dep't*, 168 N.H. 202, 210 (2015) (citing *Duchesnaye v. Munro Enterprises, Inc.*, 125 N.H. 244, 250 (1984) and Restatement (Second) of Torts § 577, at 201 (1977)). Second, if the allegedly defamatory communication concerns a private person, the defendant "(a) know[s] that the statement is false and that it defames the other, (b) act[s] in reckless disregard of these matters, or (c) act[s] negligently in failing to ascertain" the truth. *Id.* (quoting Restatement, *supra* § 580B, at 221-22).[4] Plaintiff alleges no allegedly defamatory statement or other supporting facts—or even attempts to address the elements of a claim. *See* Dkt. 1 ¶ 28. The Court should dismiss it with prejudice.

---

[4] Each Defendant's respective Terms of Service provides that California law applies to disputes arising out of the services or with an account holder. *See* Declaration of Ryan Mrazik in Support of Motion to Dismiss ("Mrazik Declaration") ¶¶ 2-4, Exs. A-C. Under California law, "[d]efamation is an invasion of the interest in reputation. The tort involves the intentional publication of a statement of fact which is false, unprivileged, and has a natural tendency to injure or which causes special damage." *Gilbert v. Sykes*, 147 Cal. App. 4th 13, 27 (2007). Regardless of the applicable law, Plaintiff has not alleged these elements.

6.      **The Court Should Dismiss Plaintiff's Negligent Infliction of Emotional Distress Claim.**

"The elements of a claim for negligent infliction of emotional distress ['NIED'] include: '(1) causal negligence of the defendant; (2) foreseeability; and (3) serious mental and emotional harm accompanied by objective physical symptoms.'" *Tessier v. Rockefeller*, 162 N.H. 324, 342 (2011) (citation omitted). "A claim for NIED, like any other negligence claim, demands the existence of a duty [running] from the defendant to the plaintiff." *Moore v. Mortgage Elec. Registration Sys.*, Inc., 848 F. Supp. 2d 107, 135 (D.N.H. 2012) (citation omitted). And, "[w]hether a duty exists in a particular case is a question of law." *Pruden v. CitiMortgage, Inc.*, No. 12-cv-452-LM, 2014 WL 2142155, at *18 (D.N.H. May 23, 2014) (citation omitted).[5] Here, once again, Plaintiff does not address any of the elements for her purported cause of action. In fact, she does not allege any facts to support a NIED claim against Defendants. Her complaint fails to identify any duty owed to her from any Defendant, much less a negligent abdication of that duty that caused her foreseeable and serious harm with objective physical symptoms. These deficiencies are not curable. The Court should therefore dismiss this claim with prejudice. *See BK v. N.H. Dep't of Health & Human Services*, 814 F. Supp. 2d 59, 72 (D.N.H. 2011) (dismissing NIED claim because plaintiff did not identify a duty that defendant owed her).

7.      **The Court Should Dismiss Plaintiff's Copyright Infringement Claim Against YouTube**

Plaintiff alleges in a conclusory fashion, without any supporting facts, that "YouTube has ignored copyright infringement law, & fair use law, and used a channel that is [sic] has

---

[5] Again, the Defendants' Terms of Service establish that California law applies to disputes arising out of the services or with an account holder. *See* Mrazik Declaration ¶¶ 2-4, Exs. A-C. In California, negligent infliction of emotional distress is a species of negligence. *Huggins v. Longs Drugs Stores Cal., Inc.*, 6 Cal.4th 124, 129 (1993). It has three elements: (1) the defendant owed a legal duty to use due care, (2) a breach of that duty, and (3) the breach was the proximate or legal cause of the resulting injury. *Ladd v. Cnty. of San Mateo*, 12 Cal.4th 913, 917 (1996). Regardless of the applicable law, Plaintiff has not pled these elements.

unlawfully taken a video, and picture that they did not have permission to do." Dkt. 1 ¶ 21. To the extent Plaintiff is asserting a copyright infringement claim, it fails as a matter of law.

A plaintiff alleging copyright infringement has the burden of proving: "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Airframe Sys., Inc. v. L-3 Commc'n Corp.*, 658 F.3d 100, 105 (1st Cir. 2011); *see also Situation Mgmt. Sys., Inc. v. ASP. Consulting LLC*, 560 F.3d 53, 58 (1st Cir. 2009) (quoting *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991)). Additionally, while "registration is not a condition of copyright protection," 17 U.S.C. § 408(a), the Copyright Act makes registration a precondition to filing a valid copyright infringement claim under the federal statute, *id.* § 411. In other words, proof of registration of the allegedly infringed work remains an "element[] of a cause of action" for copyright infringement. *Airframe*, 658 F.3d at 105 (citing *Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154, 164 (2010)).

Here, Plaintiff has not alleged she has a valid copyright or that the essential elements of her work have been copied. Nor has she alleged, much less with particularity, any proof of her registering an allegedly infringed work. Simply using the phrase "copyright infringement" does not give rise to a claim. *See Tringali*, 2012 WL 5683236, at *4 (dismissing pro se plaintiff's claims because "she has not pleaded sufficient facts" in support).

### 8. The Court Should Dismiss Plaintiff's "Partner Compensation" Claim Against YouTube.

Plaintiff claims she has a YouTube channel, Dkt. 1, ¶ 10, and alleges she "was told" that YouTube offers advertising revenue at a certain rate per view. *Id.* (According to her, "YouTube pays about .1 cent per add [sic] or $10.00 per $100,000 [sic] views." *Id.*, ¶ 12.) Plaintiff alleges she has not been paid and that YouTube "embezzled all of that revenue." *Id.* ¶ 12-13.

First, "Partner Compensation" is not a cause of action. Further, to the extent Plaintiff claims she is a YouTube partner and is entitled to payment, YouTube is not obligated to support monetization under its Partner Program and Terms. *See Sweet v. Google Inc.*, No. 17-cv-03953 - EMC, 2018 WL 1184777, at *10 (N.D. Cal. Mar. 7, 2018) (dismissing claims against YouTube for failure to monetize content because YouTube's Partner Program Policies provide that "YouTube is not obligated to display any advertisements alongside your videos").

Second, giving Plaintiff the benefit of the doubt and treating these as claims for breach of contract, she has not pled its elements. A breach of contract claim must allege: "(1) that a valid, binding contract existed between the parties, and (2) that [the defendant] breached the terms of the contract." *Sears Roebuck & Co. v. W/S Lebanon LLC*, No. 14-cv-422- JL, 2017 WL 3913218, at *2 (D.N.H. Sept. 6, 2017) (citation omitted); *Wilcox Indus. Corp. v. Hansen*, 870 F. Supp. 2d 296, 311 (D.N.H. 2012) (noting that for a breach of contract claim to survive a motion to dismiss, the plaintiff "must plausibly allege" that "a valid contract" exists and "a breach of that contract"); *see also Moore v. La-Z-Boy, Inc.*, 639 F. Supp. 2d 136, 140 (D. Mass. 2009) ("Plaintiffs have the burden of proving the existence of a contract.").[6] Here, Plaintiff does not identify any contract, much less explain what portion or provision was breached. Simply saying that she posted videos on YouTube and someone told her about the possibility of advertising on her channel at a certain rate, and is therefore entitled to be paid by YouTube, is not enough.

Third, to the extent these claims purport to be some kind of fraud-based claim, it must be dismissed because Plaintiff has failed to plead fraud with particularity as required by Fed. R. Civ.

---

[6] Again, the Terms of Service for Google and YouTube provide that California law applies to disputes arising out of the services or with an account holder. *See* Mrazik Declaration ¶ 2, Ex. A-B. In California, the elements of a breach of contract are (1) the existence of the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to the plaintiff. *Reichert v. General Ins. Co.*, 68 Cal.2d 822, 830 (1968). Regardless of the applicable law, Plaintiff has not pled these elements.

P. 9(b).  Rule 9(b) places a heightened burden on plaintiffs pleading fraud or mistake, requiring them to state "with particularity the circumstances constituting fraud or mistake." "Rule 9(b)'s requirements apply to both general claims of fraud and also to 'associated claims' . . . 'where the core allegations effectively charge fraud.'" *Mulder v. Kohl's Dep't Stores, Inc.*, 865 F.3d 17, 21-22 (1st Cir. 2017) (quoting *North Am. Catholic Educ. Programming Found., Inc. v. Cardinale*, 567 F.3d 8, 15 (1st Cir. 2009)). "Conclusory allegations . . . are not sufficient to satisfy Rule 9(b)." *U.S. ex rel. Gagne v. City of Worcester*, 565 F.3d 40, 45 (1st Cir. 2009) (internal quotation marks omitted). "Even where allegations are based on information and belief, supporting facts on which the belief is founded must be set forth in the complaint"—even if the alleged "'fraud relates to matters peculiarly within the knowledge of the opposing party[.]'" *Hayduk v. Lanna*, 775 F.2d 441, 444 (1st Cir. 1985) (quoting *Wayne Investment, Inc. v. Gulf Oil Corp.*, 739 F.2d 11, 13-14 (1st Cir. 1984)). It must plead with "'specification . . . the time, place, and content of an alleged false representation[.]'" *Doyle v. Hasbro, Inc.*, 103 F.3d 186, 194 (1st Cir. 1996) (quoting *McGinty v. Beranger Volkswagen, Inc.*, 633 F.2d 226, 228 (1st Cir. 1980)). In short, "[m]ere allegations of fraud, corruption or conspiracy, averments to conditions of mind, or referrals to plans and schemes are too conclus[ory] to satisfy the particularity requirement, no matter how many times such accusations are repeated." *Id.* (quoting *Hayduk*, 775 F.2d at 444).

Here, Plaintiff has not alleged any facts to support the contention that YouTube tampered with her subscriber or viewership counts. This is plainly insufficient. *See Hayduk*, 775 F.2d at 444 (finding "a complete lack of any facts on which" plaintiff's belief was founded and dismissing claim). No foundational facts support Plaintiff's belief that viewer or subscriber counts have been manipulated, and no surrounding circumstances are identified. The Complaint's unsupported allegations of fraud are too conclusory to satisfy Rule 9(b).

**C.      The Communications Decency Act and First Amendment Bar Plaintiff's Claims.**

This action should also be dismissed because Section 230 of the Communications

Decency Act 47 U.S.C. § 230(c)(1) and the First Amendment bar attempts to hold Defendants

liable for exercising their editorial discretion.

**1.      The Communications Decency Act Bars Plaintiff's Claims.**

Section 230(c)(1) of the CDA protects website operators from facing liability for editorial

decisions they make concerning content posted on their services. It provides that "[n]o provider

or user of an interactive computer service shall be treated as the publisher or speaker of any

information provided by another information content provider." 47 U.S.C. § 230(c)(1).

"Section 230 immunity should be broadly construed." *Universal Commc'n Sys., Inc. v.*

*Lycos, Inc.*, 478 F.3d 413, 419 (1st Cir. 2007). This immunizes from liability "traditional

editorial functions," including "decisions about how to treat postings generally." *Hiam v.*

*HomeAway.com, Inc.*, 267 F. Supp. 3d 338, 346 (D. Mass. 2017), *aff'd*, No. 17-1898, 2018 WL

1755803 (1st Cir. Apr. 12, 2018) (citing *Lycos, Inc.*, 478 F.3d at 422). A defendant is entitled to

immunity if (1) it is an "interactive computer service," (2) plaintiff's claim treats the defendant

as a "publisher" or "speaker" of the offending content, and (3) the content was "provided by

another information content provider." *Lycos*, 478 F.3d at 419. Where CDA immunity applies,

dismissal with prejudice is appropriate. *See, e.g.*, *Sikhs for Justice "SFJ", Inc. v. Facebook, Inc.*,

144 F. Supp. 3d 1088, 1096 (N.D. Cal. 2015), *aff'd sub nom. Sikhs for Justice, Inc. v. Facebook,*

*Inc.*, 697 F. App'x 526 (9th Cir. 2017) (refusing to grant leave to amend claims barred by the

CDA).

This immunity applies to Defendants here. They are "interactive computer services"

under the CDA's broad definition of that term. 47 U.S.C. § 230(f) ("any information service,

system, or access software provider that provides or enables computer access by multiple users

to a computer server.").[7] And Plaintiff's claims treat them as publishers by targeting their decisions regarding removing content, closing accounts, or whether and how to allow advertising to appear on a YouTube channel. *See, e.g.*, *Klayman v. Zuckerberg*, 753 F.3d 1354, 1359 (D.D.C. 2014) ("Indeed, the very essence of publishing is making the decision whether to print or retract a given piece of content—the very actions for which Klayman seeks to hold Facebook liable."); *Sikhs for Justice*, 144 F. Supp. 3d at 1090 (holding that Facebook blocking access to a page treated Facebook as the page's publisher); *Goddard v. Google, Inc.*, 640 F. Supp. 2d 1193, 1201-02 (N.D. Cal. 2009) (Google's policies regarding publication of third-party ads were a publisher function covered by Section 230(c)(1)). Lastly, Plaintiff is the "information content provider"—it is her accounts and content at issue. *See Sikhs for Justice*, 144 F. Supp. 3d at 1094 (finding that the creator of a Facebook page that Facebook allegedly blocked was the "information content provider" for purposes of CDA immunity).

Defendants are therefore immune under Section 230(c)(1) to the extent Plaintiff's claims arise from protected publishing activity, and any such claims should therefore be dismissed with prejudice. *See Lancaster*, 2016 WL 3648608, at *3 (dismissing with prejudice under the CDA all of plaintiff's claims based on YouTube's removal of plaintiff's videos from its service); *Sikhs for Justice*, 144 F. Supp. 3d at 1094 (dismissing with prejudice claims against Facebook based on Facebook's alleged blocking of user content); *Frenken v. Hunter, et al.*, No. 17-cv-02667-HSG, 2018 WL 1964893, at *3 (N.D. Cal. Apr. 26, 2018) (dismissing with prejudice pro se plaintiff's claims against Twitter based on the content of third party's Tweets).

---

[7] *See, e.g.*, *Am. Freedom Def. Initiative v. Lynch*, 217 F. Supp. 3d 100, 104 (D.D.C. 2016), *aff'd sub nom. Am. Freedom Def. Initiative v. Sessions*, 697 Fed. App'x 7 (D.C. Cir. 2017) (agreeing that YouTube is an interactive computer service); *Fields v. Twitter, Inc.*, 217 F. Supp. 3d 1116, 1121 (N.D. Cal. 2016) (holding that Twitter is an interactive computer service); *Lancaster v. Alphabet Inc.*, No. 15-cv-05299-HSG, 2016 WL 3648608, at *3 (N.D. Cal. July 8, 2016) ("The Court finds, and Plaintiff appears to concede, that YouTube and Google are 'interactive computer services.'"); *Gavra v. Google Inc.*, No. 12-cv-06547-PSG, 2013 WL 3788241, at *1 (N.D. Cal. July 17, 2013) (finding Google and YouTube immune from liability under the CDA).

2.      **The First Amendment Bars Plaintiff's Claims.**

The First Amendment to the U.S. Constitution also bars all Plaintiff's claims that arise from Defendants' editorial decisions. Plaintiff asserts that Defendants violated the First Amendment, but she ignores Defendants' own First Amendment rights to exercise editorial control over their platforms, the content on it, and how that content is administered.

Under the First Amendment, Defendants have a constitutionally protected right to decide which speech to allow on their platforms. *See, e.g.*, *La'Tiejira v. Facebook, Inc.*, 272 F. Supp. 3d 981, 991 (S.D. Tex. 2017) (collecting cases and holding that Facebook has a "First Amendment right to decide what to publish and what not to publish on its platform"); *Zhang v. Baidu.com, Inc.*, 10 F. Supp. 3d 433 (S.D.N.Y.) (dismissing case where relief sought would violate search engine's First Amendment rights and noting that "a 'search engine's editorial judgment is much like many other familiar editorial judgments,' such as the newspaper editor's judgment of which wire-service stories to run and where to place them in the newspaper, the guidebook writer's judgments about which attractions to mention and how to display them, and Matt Drudge's judgments about which stories to link and how prominently to feature them").[8] This includes whether and how to allow advertising. *Cf. Langdon*, 474 F. Supp. 2d at 630 (holding that the First Amendment barred plaintiff's demand that Google display Plaintiff's advertisements in search results because it would "compel [Google] to speak in a manner deemed appropriate by plaintiff and would prevent Google from speaking in ways that Plaintiff dislikes").

---

[8] The same protection is afforded to other hosts of content such as cable TV operators and newspapers. *See Turner Broadcasting System, Inc. v. F.C.C.*, 512 U.S. 622, 636 (1994) ("[B]y exercising editorial discretion over which stations or programs to include in its repertoire, cable programmers and operators seek to communicate messages on a wide variety of topics and in a wide variety of formats.") (internal quotation marks omitted); *Miami Herald Pub. Co. v. Tornillo*, 418 U.S. 241, 258 (1974) (newspaper is not required to publish op-ed columns it disagrees with).

In short, Plaintiff's attempt to hold Defendants liable for decisions to exclude speech by suspending accounts and removing content "cannot be squared with the First Amendment." *Baidu*, 10 F. Supp. 3d at 443. Plaintiff's claims should therefore be dismissed with prejudice.

**D.     Alternatively, the Case Should be Transferred to the Northern District of California.**

Alternatively, if the claims against Defendants are not dismissed, they should be transferred to the Northern District of California pursuant to Defendants' Terms of Service:

- **Google:** "[a]ll claims arising out of or relating to these terms of the Services [provided by Google and YouTube] will be litigated exclusively in federal or state courts of Santa Clara County, California." Mrazik Declaration ¶ 2, Ex. A.

- **Twitter:** "[a]ll disputes related to these Terms of the Services [provided by Twitter] will be brought solely in federal or state courts located in San Francisco County, California." Mrazik Decl. ¶ 3, Ex. B

- **YouTube:** "[a]ny claim or dispute between you and YouTube that arises in whole or in part from the Service shall be decided exclusively by a court of competent jurisdiction located in Santa Clara County, California." *Id.* ¶ 4, Ex. C.[9]

These clauses are mandatory, applicable, and enforceable and, under 28 U.S.C. § 1404(a), require transfer of any surviving claims. *See Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Tex.*, 571 U.S. 49, 58-59 (2013) (clarifying that 28 U.S.C. § 1404(a) is the proper mechanism to enforce a forum‑selection clause); *Song fi, Inc. v. Google Inc.*, 72 F. Supp. 3d 53, 60 (D.D.C. 2014) (transferring claims against YouTube to the Northern District of California

---

[9] The Court can consider these Terms of Service and their forum selection clauses, as well as the declaration authenticating them, without converting this into a motion for summary judgment. *See Gibson v. Ecoquest, Inc.*, No. 16-cv-2702-BJM, 2017 WL 2859744, at *3 (D.P.R. July 5, 2017) (considering forum selection clause, authenticated through a witness declaration, on a motion to transfer without converting motion to one for summary judgment).

because "[a]llowing Plaintiffs to proceed in this District, when their claims all relate to conduct based on YouTube's Terms of Service, would undermine the very purpose of forum selection clauses."); *Darnaa, LLC v. Google, Inc.*, No. 15-cv-03221-RMW, 2015 WL 7753406, at \*2 (N.D. Cal. Dec. 2, 2015), *on reconsideration in part*, No. 15-cv-03221-RMW, 2016 WL 6540452 (N.D. Cal. Nov. 2, 2016) (finding YouTube's Terms of Service enforceable); *Wingo v. Twitter, Inc.*, No. 14-2643, 2014 WL 7013826, at \*1, \*3 (W.D. Tenn. Dec. 12, 2014) (transferring an action to the Northern District of California under Twitter's Terms of Service).[10]

First, the forum selection clauses are mandatory rather than permissive. *See Rivera v. Centro Médico de Turabo, Inc.*, 575 F.3d 10, 17 (1st Cir. 2009) ("[M]andatory forum selection clauses contain clear language indicating that jurisdiction and venue are appropriate exclusively in the designated forum.") (citation omitted). Google's and YouTube's forum selection clauses provide that all claims must be brought "exclusively" in the federal and state courts in Santa Clara County, California; Twitter's provides that all disputes will be brought "solely" in San Francisco County. These are unambiguous: the only venue where covered claims can be brought are in the identified counties, which are both in the Northern District of California. Mandatory forum selection clauses are presumptively valid and should be enforced absent a strong showing that enforcement would be unfair or unreasonable. *Carnival Cruise Lines v. Shute, Inc.*, 499 U.S. 585, 593 95 (1991) (upholding the validity of a forum selection clause in a form contract).

Second, the scope of the forum selection clauses apply to this dispute. The First Circuit has emphasized that "it is the language of the forum selection clause itself that determines which claims fall within its scope." *Claudio-De Leon v. Sistema Universitario Ana G. Mendez*, 775

---

[10] Even if other defendants have different forum selection clauses, or none at all, the claims against Defendants would still be transferred, although they would be severed. *See, e.g.*, *Gibson*, 2017 WL 2859744, at \*6 (transfer forum would be proper for some defendants so court would sever and transfer claims for only those defendants); *Fuller v. FCI Manchester Health Serv.*, No. 12-cv-7025-NLH, 2016 WL 1182255 (D.N.J. Mar. 28, 2016) (same).

F.3d 41, 47 (1st Cir. 2014) (citation omitted). Here, Google and YouTube's clauses cover "any" dispute and "all" claims relating to Google and YouTube's services, which include claims regarding removal of Blogger content and the allegations as to YouTube. Twitter's clause covers "all" claims relating to Twitter's services, which include Twitter allegedly locking Plaintiff out of her accounts. Plaintiff's claims therefore fall within the scope of the relevant clauses.

Third, the forum selection clauses are enforceable. Plaintiff bears the heavy burden of proof to establish that a forum selection clause should not be enforced, and cannot do so. *See M/S Bremen v. Zapata Off–Shore Co.*, 407 U.S. 1, 17 (1972) (explaining that the party arguing that a forum selection clause is inapplicable "bear[s] a heavy burden of proof"); *In re Mercurio*, 402 F.3d 62, 66 (1st Cir. 2005) (recognizing the "'heavy burden of proof'" to overcome a forum selection clause on inconvenience grounds); *Claudio-De Leon*, 775 F.3d at 48 (same).

In the First Circuit, courts consider four factors to determine whether a forum selection clause is unenforceable: (1) whether the clause was the product of "fraud or overreaching;" (2) "enforcement would be unreasonable and unjust;" (3) proceedings "in the contractual forum will be so gravely difficult and inconvenient that [the party challenging the clause] will for all practical purposes be deprived of [her] day in court;" or (4) "enforcement would contravene a strong public policy of the forum in which suit is brought, whether declared by statute or by judicial decision." *Rafael Rodríguez Barril*, 619 F.3d at 93 (alteration in original).

None of those factors suggests that the clauses at issue here are unenforceable.

First, Plaintiff is an admitted Google, Twitter, and YouTube account holder and agreed to the applicable Terms of Service, which obviates any argument that the clauses are fraudulent or unreasonable, or that enforcing them would be inconvenient. *See* Mrazik Decl. ¶ 2, Ex A ("By using [Google's] Services, you are agreeing to these terms."); ¶ 3, Ex. C ("[Twitter's] Terms of

Service … govern your access to and user of our services . . . . By using the Services, you agree to be bound by these Terms"); ¶ 4, Ex. C at 1.A. ("By using or visiting the YouTube website or any YouTube products, software, data feeds, and services provided to you on, from, or through the YouTube website (collectively the Service) you signify your agreement to (1) these terms and conditions (the Terms of Service)..."); *see, e.g.*, *Song Fi*, 72 F. Supp. 3d at 56 (upholding enforceability of YouTube's forum selection clause); *Rojas-Lozano v. Google, Inc.*, 159 F. Supp. 3d 1101, 1107 (N.D. Cal. 2016) (noting that the District of Massachusetts had found that Google's "Terms of Service applied to [plaintiff's] claim and transferred the case to the Northern District of California"); *Feldman v. Google, Inc.*, 513 F. Supp. 2d 229, 233 (E.D. Pa. 2007) (Google's forum selection clause is binding); *Wingo*, 2014 WL 7013826, at *3 (enforcing Twitter's forum selection clause as to a user who agreed to the Terms when he signed up for his account); *Twitter, Inc. v. Skootle Corp.*, No. 12-1721-SI, 2012 WL 2375486, at *6 (N.D. Cal. June 22, 2012) (rejecting inconvenience argument where litigant agreed to terms of service as "insufficient to show that enforcement of the forum selection clause would be so gravely difficult as to deprive him of his day in court"); *Bowen v. YouTube, Inc.*, No. C08-5050FDB, 2008 WL 1757578, at *2 (W.D. Wash. Apr. 15, 2008) (YouTube's forum selection clause "is valid and enforceable"). Nothing in Plaintiff's complaint suggests that she agreed to these provisions only through fraud, and if Plaintiff did not want to agree to them, she could have not used the services.

Additionally, as the Supreme Court held in *Atlantic Marine*, while a district court ordinarily evaluates the "convenience of parties and witnesses" on a motion to transfer, a forum selection clause changes this analysis. 571 U.S. at 62. A forum selection clause "represents the parties' agreement as to the most proper forum," and it should be given "controlling weight in all

but the most exceptional cases." *Id*. By consenting to the forum selection clause, Plaintiff "has

waived . . . the right to challenge the preselected forum as inconvenient." *See Wingo*, 2014 WL

7013826, at *3. "As a consequence, a district court may consider arguments about public-interest

factors only." *Atl. Marine*, 571 U.S. at 65. Here, transferring the case would not violate the

public policy of New Hampshire. To the contrary, the purpose of a forum selection clause "is, at

least in part, to protect defendants and give them a voice as to where a dispute will be heard and

resolved." *Claudio-De Leon*, 775 F.3d at 47 (citing *Huffington v. T.C. Grp., LLC*, 637 F.3d 18,

22-23 & n.3 (1st Cir. 2011); *C. Pappas Co. v. E. & J. Gallo Winery*, 565 F. Supp. 1015, 1018 (D.

Mass. 1983)). Transferring the case is therefore consistent with this State's public policy.

Taken together, there is no reason to override "the presumption of enforceability" that

requires Plaintiff to bring her complaint against Defendants in the Northern District of

California. Therefore, if any claims survive, they should be transferred accordingly.

## IV.   CONCLUSION

For the reasons above, Defendants respectfully request that the Court dismiss Plaintiff's

claims with prejudice. Alternatively, any surviving claims against Defendants should be

transferred to the Northern District of California.

WHEREFORE, Defendants respectfully request that the Court grant this motion.

Respectfully submitted,
*Counsel for Defendants*,

May 15, 2018                          /s/ Timothy J. McLaughlin
                                      Timothy J. McLaughlin (NH Bar # 19570)
                                      107 Storrs Street, P.O. Box 2703
                                      Concord, NH 03301
                                      1 (603) 225-7262
                                      tmclaughlin@shaheengordon.com

                                      Ryan Mrazik (*motion for pro hac vice
                                      admission to be filed*)

21

Perkins Coie LLP
1201 Third Avenue, Suite 4900
Seattle, WA 98101
RMrazik@perkinscoie.com

**CERTIFICATE OF SERVICE**

I hereby certify that on this date, the foregoing was served by the Court's electronic filing system on all counsel and parties of record or for parties not registered with the Court' CM/ECF system by U.S. Mail.

/s/ Timothy J. McLaughlin
Timothy J. McLaughlin