```
            UNITED STATES DISTRICT COURT
          FOR THE DISTRICT OF NEW HAMPSHIRE
```

Natasha DeLima

    v.                                    Civil No. 17-cv-733-PB

YouTube, LLC et al.[1]

**REPORT AND RECOMMENDATION**

Before the court for preliminary review is plaintiff Natasha DeLima's amended complaint (Doc. No. 131) and documents the court deems to be addenda to the amended complaint (Doc. Nos. 72, 87, 130, 130-1, 130-2, 130-3). See LR 4.3(d)(2); Aug. 17, 2018 Order (referring amended complaint to magistrate judge for preliminary review). Also before the court for consideration and a report and recommendation are the plaintiff's motions seeking preliminary injunctive relief (Doc. Nos. 3, 5-8, 11, 17, 28, 29).

**Pending Appeals**

As an initial matter, the court notes that DeLima has filed four notices of appeal (Doc. Nos. 115, 126, 132, 138) that have been forwarded to the First Circuit.

> [T]he Courts of Appeals have jurisdiction of appeals from final decisions, 28 U.S.C. § 1291, a defined group of interlocutory decisions, 28 U.S.C. § 1292, and a "small class [of decisions] which finally

---

[1] The defendants in this case are: Google LLC; Twitter, Inc.; YouTube, LLC; Patreon, Inc.; Facebook, Inc.; GoFundMe, Inc.; and Blogspot.com.

> determine claims of right separable from, and
> collateral to, rights asserted in the action, too
> important to be denied review and too independent of
> the cause itself to require that appellate
> consideration be deferred until the whole case is
> adjudicated."

Perry v. Tinkham, No. 2:15-CV-00310-JCN, 2018 WL 2376090, at *1 n.3, 2018 U.S. Dist. LEXIS 87069, at *2 n.3 (D. Me. May 24, 2018) (quoting Cohen v. Beneficial Indus. Loan Corp., 337 U.S. 541, 546 (1949)), appeal filed sub nom. Perry v. Alexander, No. 18-1572 (1st Cir., filed June 18, 2018).  The order, and lack of orders, challenged in DeLima's notices of appeal are neither final orders under § 1291 nor subject to interlocutory appeal under § 1292.  DeLima's filing of notices of appeal have not divested this court of jurisdiction over this matter.  The court finds, therefore, that it retains jurisdiction over all of the matters presently before the court in this case.

**Preliminary Review**

I.  Standard

In determining whether a pro se pleading states a claim, the court construes the pleading liberally.  See Erickson v. Pardus, 551 U.S. 89, 94 (2007).  To survive preliminary review, the complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief.'"  See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citation omitted).  Disregarding conclusory allegations and legal conclusions, the court treats

2

as true all well-pleaded factual allegations, and construes reasonable inferences in plaintiff's favor. See Hernandez-Cuevas v. Taylor, 723 F.3d 91, 102-03 (1st Cir. 2013) (citing Iqbal, 556 U.S. at 678); Ocasio-Hernández v. Fortuño-Burset, 640 F.3d 1, 12 (1st Cir. 2011). The court may dismiss claims asserted in a complaint if the court lacks jurisdiction, a defendant is immune from the relief sought, the complaint fails to state a claim, or the action is frivolous or malicious. See 28 U.S.C. § 1915(e)(2); LR 4.3(d)(2).

II. Background

DeLima's amended complaint (Doc. No. 131) contains no clear narrative and is difficult to understand. Many of DeLima's assertions are legal conclusions that are not supported by any specific facts. Liberally construed, the amended complaint appears to allege the following facts and claims.

In her amended complaint (Doc. No. 131) and addenda thereto (Doc. Nos. 72, 87, 130, 130-1, 130-2, 130-3) (collectively "First Amended Complaint" or "FAC"), DeLima asserts claims against defendants Google LLC ("Google"); Twitter, Inc. ("Twitter"); YouTube, LLC ("YouTube"); Facebook, Inc. ("Facebook"); Patreon, Inc. ("Patreon"); GoFundme, Inc. ("GoFundMe"); and Blogspot.com. DeLima's claims arise out of her assertions that her rights were violated in connection with

her use of the defendants' websites.  DeLima alleges that she has created one or more accounts on YouTube, Google, Facebook Twitter, Blogspot.com, Patreon, or GoFundMe, and that she is a member of a group of Facebook users who contribute to a Facebook account entitled "Stop Bullying Protect All Children."  Using those accounts, DeLima posts videos and other content.  Other users of the defendants' websites follow DeLima's accounts as subscribers, or view her videos and other content without subscribing.

DeLima asserts that the number of people who view and subscribe to her accounts on the defendants' websites entitles her to certain advertising revenue earned by YouTube and possibly other defendants, and that those defendants have embezzled such revenue from her.  DeLima further asserts that on two of the websites, Patreon and GoFundMe, she has established fundraising websites, but that Patreon and GoFundMe have embezzled money donated or pledged to her through those websites.  DeLima claims the defendants have engaged in various tactics to receive money to which she is entitled, including manipulating data concerning the number of people who subscribe to and view her videos, and otherwise tampering with her accounts.

Although DeLima concedes that she "does not actually know how much is paid [by YouTube/Google] per ad, per view and per

4

option of advertising," FAC at 5, she states in the FAC that the defendants are embezzling 90% or 100% of the money she has earned on defendants' internet platforms. DeLima acknowledges that she has received payments from Google for revenue earned by her YouTube channel, as Google owns YouTube, but that the amount paid to her was a small percentage of what it should have been, and was reduced by the defendants' "illicit acts."

DeLima further claims that the defendants, motivated by political bias, based on the views she expresses in her videos and other postings, have locked her out of her various accounts; closed her accounts; denied her the ability to post some or all content; deleted subscribers, comments, and view-counts relating to her accounts; placed false strikes on her accounts; stole or otherwise denied DeLima access to her "virtual property,"[2] and otherwise harassed her.

DeLima additionally states that at one time she had a blog on Blogspot.com with the domain name http://natashanothingbuttruth.blogspot.com. At some point she stopped using that domain. DeLima alleges that although she purchased that domain, and that she holds a copyright in the

---

[2] The FAC does not explain what "virtual property" is, but refers the court to Hosseinzadeh v. Klein, 276 F. Supp. 3d 34 (S.D.N.Y. 2017), which DeLima describes as "[t]he ruling case for all of the virtual property rights." That case does not contain the phrase "virtual property" or otherwise make clear what DeLima intends to identify as her virtual property in this case.

5

domain name, defendants Blogspot.com and Google have allowed someone else to use that domain name to post content, some of which she alleges is defamatory and harms DeLima and/or her audience.

Generously construing the assertions in the FAC, the court finds that DeLima asserts the following claims in this action:

1. All of the defendants have violated the Fair Labor Standards Act, 29 U.S.C. § 207(a)(1) ("FLSA"), by failing to pay DeLima minimum wage.

2. All of the defendants have embezzled money earned by DeLima on the defendants' internet platforms and engaged in other criminal activity with regard to DeLima's use of those platforms.

3. All of the defendants have violated DeLima's First Amendment right to free speech, and engaged in viewpoint discrimination, by: a) censoring the content she posts on the defendants' internet platforms; b) denying DeLima access to the defendants' internet platforms; and c) requiring that DeLima agree to "Terms of Service" which allow the defendants to curtail her free speech rights.

4. Blogspot.com and Google have violated DeLima's civil rights and engaged in the "crime of cyberbullying" by allowing someone to reuse a domain name DeLima purchased, but had ceased to use, to (a) harass, bully, demean, ridicule, lie about, defame, libel, and slander DeLima, and (b) infringe upon DeLima's copyright in the domain name.

5. Facebook has violated Federal Communications Commission ("FCC") rules concerning the protection of privacy and protection from recorded phone calls.

6. Facebook targeted DeLima because she was trying to expose and prevent sex trafficking, in violation of: (a) the Computer Fraud and Abuse Act, 18 U.S.C. § 1030, et seq. ("CFAA"); (b) the Stop Advertising Victims of Exploitation Act of 2015, 18 U.S.C. § 1591(a) ("SAVE Act"); and the combined Allow States and Victims to Fight Online Sex Trafficking Act and Stop Enabling Sex Traffickers Act ("FOSTA-SESTA").

7.   Facebook has sold DeLima's personal data to advertisers, in violation of her right to privacy in that information.

8.   All of the defendants have improperly forced DeLima to consent to "Terms of Service," and changes to those Terms of Service of which users are not given notice, which "violate the Constitution, Federal laws, and civil rights, as well as virtual property rights . . . [are] discriminatory, and allow for the theft and 'virtual closing' of sites . . . and [] virtual laws, that they make up" in order to utilize each of the defendants' internet platforms or services.

9.   All of the defendants have haunted, chased, spied on, targeted, demeaned, attempted to ambush plaintiff; placed false strikes on plaintiff's accounts; closed or shut down plaintiff's accounts; locked plaintiff out of her accounts; tried to use United Kingdom law or "Sharia law" in the United States to avoid complying with federal law; denied plaintiff the use of and access to her "virtual property"; placed warnings on DeLima's website; tried to stop people from accessing DeLima's accounts; prevented DeLima's accounts from being viewed on cell phones; stolen DeLima's intellectual and "virtual" property; engaged in "shadowbanning" and cyberbullying; manipulated data relating to DeLima's accounts on the defendants' platforms; failed to "monetize" DeLima's accounts, and violated "internet rules."

10.  All of the defendants have harmed DeLima's audience members and other users of their internet platforms, including Isaac Green, Julian Assange, and Melania Trump.

11.  Defendants have violated Donald Trump's December 2017 Executive Order.

III. <u>Discussion</u>

   A.   <u>FLSA – Claim 1</u>

Plaintiff asserts that defendants violated FLSA by failing to pay DeLima minimum wage.  To state a FLSA claim, a plaintiff

7

must assert: "(1) that he was employed by the defendants; (2) his work involved interstate activity; and (3) he performed work for which he was under-compensated." Chen v. C & R Rock Inc., No. 14-cv-114-AJ, 2016 WL 1117416, at *3, 2016 U.S. Dist. LEXIS 36951, at *7 (D.N.H. Mar. 22, 2016). DeLima does not allege, or state facts to suggest, that she was ever employed by any of the defendants. Accordingly, the district judge should dismiss this claim, identified in this Report and Recommendation ("R&R") as Claim 1.

### B.   Criminal Acts – Claim 2

DeLima alleges that all of the defendants have engaged in criminal conduct. DeLima does not have a protected interest or right to have alleged wrongdoers investigated or criminally prosecuted. Cf. Nieves-Ramos v. Gonzalez-De-Rodriguez, 737 F. Supp. 727, 728 (D.P.R. 1990) (citing Linda R. S. v. Richard D., 410 U.S. 614, 619 (1973) ("a private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another")). Accordingly, the district judge should dismiss DeLima's claim seeking relief on the basis that the defendants engaged in criminal conduct, identified in this R&R as Claim 2.

C.  First Amendment – Claim 3

DeLima asserts that the defendants have discriminated against her based on her political views, and censored her expression of those views on the defendants' internet platfroms, in violation of her First Amendment rights. "[T]he constitutional guarantee of free speech is a guarantee only against abridgment by government, federal or state." Hudgens v. NLRB, 424 U.S. 507, 513 (1976). "[O]nly the government can violate First Amendment rights: every First Amendment claim thus requires state action in some sense." McGuire v. Reilly, 386 F.3d 45, 60 (1st Cir. 2004).

DeLima alleges that by censoring and deleting content she has posted on the defendants' internet platforms, and otherwise inhibiting her ability to express herself, the defendants have violated her right to free speech and engaged in viewpoint discrimination. Defendants are all private companies. DeLima has failed to allege any state action giving rise to the alleged violations of her First Amendment rights, and the district judge should dismiss DeLima's First Amendment claims, identified in this R&R as Claim 3.

D.  Domain Name

DeLima asserts that she bought a domain name from Blogspot.com, a blog hosting service owned by Google. She says

9

that she later shortened the name of her personal blog and stopped using the longer name, but that she retains the copyright in the longer domain name.  DeLima alleges that, when she ceased to use the longer domain name, Google and Blogspot.com allowed it to be used by a third party, identified by DeLima as "Bruce Bot," the moniker used by the blog's present author.  DeLima state that Bruce Bot has cyberbullied her, used her virtual property, harassed, defamed, libeled and slandered her, and infringed upon her copyright in the domain name. DeLima states that by allowing her domain name to be "recycled," rather than placing it in "internet trash," Blogspot.com and Google are liable for the harm she alleges has been caused, both to DeLima and her audience, as a result of Bruce Bot's use of that domain.

1. <u>Liability for Blogspot.com Content – Claim 4(a)</u>

Section 230 of the Communications Decency Act, 47 U.S.C. § 230(c)(1) ("CDA") provides, in pertinent part, that "[n]o provider or user of an interactive computer service shall be treated as the publisher or speaker of any information <u>provided by another information content provider</u>."  <u>Id.</u> (emphasis added).

> Section 230 defines an "interactive computer service" ("ICS") as "any information service, system, or access software provider that provides or enables computer access by multiple users to a computer server." Subsection 230(f)(3) then defines an "information content provider" ("ICP") as "any person or entity that

>   is responsible, in whole or in part, for the creation
>   or development of information provided through the
>   Internet or any other interactive computer service."

Small Justice LLC v. Xcentric Ventures LLC, 873 F.3d 313, 318 (1st Cir. 2017) (citations omitted). "[T]o avail itself of the immunity set forth in § 230(c)(1)," a defendant "must be a provider or user of an [ICS]"; defending a claim "based on information provided by another [ICP]"; and the claim at issue must "treat [the ICS] as the publisher or speaker of that information." Small Justice LLC, 873 F.3d at 318.

Google is an ICS, see Weerahandi v. Shelesh, No. 3:16-CV-06131-BRM-TJB, 2017 WL 4330365, at *6, 2017 U.S. Dist. LEXIS 163910, at *19 (D.N.H. Sept. 29, 2017), and Blogspot.com, which is owned by Google and serves as an online venue for Google's interactive computer services, and is thus also an ICS. Both of those defendants are therefore afforded immunity under the CDA "for the publication of defamatory content prepared or posted by others." Pagan v. Google Corp., No. 16-cv-401-JD, 2016 WL 7187645, at *1, 2016 U.S. Dist. LEXIS 170738, at *2 (D.N.H. Nov. 15, 2016). The fact that Bruce Bot may have been improperly using a domain name that belongs to DeLima does not serve as a basis to hold Google or Blogspot liable for the content posted by Bruce Bot using that domain name. Accordingly, the district judge should dismiss DeLima's claim, identified in this R&R as Claim 4(a).

### 2. Copyright Infringement – Claim 4(b)

DeLima claims that the content placed on Blogspot.com by Bruce Bot in connection with DeLima's former domain name amounted to copyright infringement by Google and Blogspot.com. Assuming, without deciding, that the CDA does not immunize the defendants from such a claim, the court considers whether DeLima has asserted sufficient facts to state a copyright infringement claim upon which relief might be granted.

"To establish copyright infringement, the plaintiff must prove two elements: '(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original.'" Latin Am. Music Co. v. Media Power Grp., Inc., 705 F.3d 34, 38 (1st Cir. 2013). "Registration of a copyright is a precondition to filing a copyright infringement claim." Id. at 42-43. To satisfy the "ownership of a valid copyright" element, DeLima must, at a minimum, demonstrate that she has registered a copyright in the domain name she alleges has been infringed. DeLima has failed to do so, and her bald assertion that the domain name is "copyrighted," without more, is insufficient to state a copyright infringement claim. Accordingly, the district judge should dismiss DeLima's copyright infringement claim, identified as Claim 4(b) in this R&R.

### E.  FCC Rules – Claim 5

DeLima alleges, without elaboration, that defendants engaged in conduct that violated FCC Rules concerning protection of privacy and protection from recorded phone calls.  DeLima has provided a link to a page on the FCC website, but does not cite to any law giving rise to a private right of action for her claim, and she does not state any factual allegations to support any claim that this court can identify, upon which relief can be granted.  Accordingly, the district judge should dismiss DeLima's claim that defendants violated FCC rules, identified in this R&R as Claim 5.

### F.  CFAA, SAVE Act & FOSTA-SESTA – Claim 6

DeLima asserts that Facebook "targeted" her because she was trying to expose and prevent sex trafficking on Facebook.  DeLima claims that Facebook is subject to civil and/or criminal liability for violations of the CFAA, the SAVE Act, and FOFSTA-SESTA.  As discussed above, DeLima does not have standing to prosecute another criminally.

Civil liability is available under the CFAA when an individual "'intentionally accesses a computer without authorization or exceeds authorized access, and thereby obtains information from any protected computer,'" resulting in damages exceeding $5000.  Wentworth-Douglass Hosp. v. Young & Novis

13

Prof'l Ass'n, No. 10-cv-120-SM, 2012 WL 2522963, at *1-2, 2012 U.S. Dist. LEXIS 90446, at *2 (D.N.H. June 29, 2012) (quoting 18 U.S.C. § 1030(a)(2)(c)) (emphasis omitted).  DeLima has not asserted any facts indicating that Facebook has accessed her computer, or otherwise caused damage actionable under the CFAA.

The SAVE Act allows for a private right of action for a victim of sex trafficking suing an interactive computer service that ran an advertisement that facilitated sex trafficking with regard to that victim.  See 18 U.S.C. § 1595.  DeLima has not asserted that she has been a victim of sex trafficking, and thus has not stated any basis to maintain a civil action against Facebook under the SAVE Act.

The FOSTA-SESTA amends the CDA to remove immunity from suit for interactive computer services under limited circumstances, concerning sex trafficking, that are irrelevant to this action, or to any assertion by DeLima.³  DeLima cannot, therefore, state a claim based on FOSTA-SESTA.

---

³FOSTA-SESTA amends the Communications Act of 1934, the original law on which the 1996 CDA was built, to clarify that:

> Section 230 does not limit: (1) a federal civil claim for conduct that constitutes sex trafficking, (2) a federal criminal charge for conduct that constitutes sex trafficking, or (3) a state criminal charge for conduct that promotes or facilitates prostitution in violation of this bill . . . .  Currently, it a crime to knowingly benefit from participation in a venture that engages in sex trafficking.  This bill defines

14

DeLima has failed to state facts which give rise to a private cause of action under the CFAA, SAVE Act, or FOSTA-SESTA. Accordingly, the district judge should dismiss these claims, identified collectively in this R&R as Claim 6.

G. Facebook's Sale of Personal Data – Claim 7

DeLima asserts that Facebook sold her "personal data" to advertisers. Although not explicitly asserted, DeLima appears to intend to assert a violation of her right to privacy in the information she describes as "personal data." Without further allegations that Facebook engaged in tortious conduct or breached a contract in doing so, DeLima has failed to state a claim based on the alleged sale of her personal data by Facebook, and the district judge should dismiss this claim, identified in this R&R as Claim 7.

---

> "participation in a venture" to mean knowingly assisting, supporting, or facilitating a sex trafficking violation.
>
> This clarification that the CDA does not grant broad immunity for Web sites knowingly participating in, and supporting, the facilitation of sex trafficking or prostitution, is further advanced by provisions to allow survivors to recover damages through civil actions.

Haley Halverson, Ending Immunity of Internet-Facilitated Commercial Sexual Exploitation Through Amending the Communications Decency Act, 21 J. Internet L. 3, 12–13 (2018) (footnote omitted).

15

H.  Terms of Service Agreements – Claim 8

DeLima objects to the defendants' policies that require her to consent to "Terms of Service," "Terms of Use," "Terms and Conditions," or similar agreements, prior to using defendants' internet platforms. DeLima cites as the bases for her claim that the agreements defendants required her to sign violate the law or otherwise violate her rights, and that defendants sometimes change the agreements without notice. DeLima's assertions in this regard are entirely conclusory, and fail to state any specific term of any agreement that violates any right accruing to DeLima or otherwise gives rise to a cause of action. Delima has thus failed to state any cognizable claim in this matter based on the requirement of agreeing to "Terms of Service," or similar documents, to use a website. Accordingly, the district judge should dismiss this claim, identified in this R&R as Claim 8.

I.  Other Assertions – Claim 9

In Claim 10, as identified in this R&R, DeLima has asserted a laundry list of wrongs to which, she alleges, the defendants have subjected her, causing her harm. These allegations all describe conduct that constitutes the "exercise of a publisher's traditional editorial functions – such as deciding whether to publish, withdraw, postpone or alter content," for which the CDA

16

immunizes the defendant interactive computer service providers. Hiam v HomeAway.com, Inc., 267 F. Supp. 3d 338, 346 (D. Mass. 2017), aff'd, 887 F.3d 542 (1st Cir. 2018).

The allegations listed in Claim 10 are insufficient to state a cause of action upon which relief might be granted. Accordingly, the district judge should dismiss the claims identified collectively in this R&R as Claim 9.

### J. Claims Asserted on Behalf of Others – Claim 10

In the FAC, DeLima has asserted claims based on allegations that the defendants have violated the rights of individuals other than herself. DeLima cannot assert a violation of another's persons rights in this case, as she is not a lawyer, and thus cannot represent the interests of anyone other than herself in this court. See 28 U.S.C. § 1654; LR 83.2(d). Accordingly, to the extent DeLima has asserted claims on behalf of any other individual, the district judge should dismiss those claims, identified collectively in this R&R as Claim 10.

### K. Executive Order – Claim 11

DeLima asserts, without explanation or support, that defendants have violated a December 2017 Executive Order issued by Donald Trump. This claim, identified in this R&R as Claim 14, is an unsupported conclusory statement. Nothing before the

court suggests that any executive order gives rise to a right that a private party may enforce against another private party, or that DeLima otherwise has a private right of action. The district judge should dismiss Claim 11 for failure to state a claim upon which relief can be granted.

## Preliminary Injunction Motions

### I. Injunctive Relief Sought

DeLima has moved for preliminary injunctive relief (Doc. Nos. 3, 5-8, 11, 17, 29). "'A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest.'" Glossip v. Gross, 135 S. Ct. 2726, 2736 (2015) (citation omitted); see also Voice of the Arab World, Inc. v. MDTV Med. News Now, Inc., 645 F.3d 26, 32 (1st Cir. 2011). Demonstrating a likelihood of success on the merits is a prerequisite to obtaining preliminary injunctive relief. See Esso Std. Oil Co. v. Monroig-Zayas, 445 F.3d 13, 18 (1st Cir. 2006) ("if the moving party cannot demonstrate that he is likely to succeed in his quest," preliminary injunctive relief is properly denied without further analysis). The burden of proof is on the movant. See id.

For reasons explained in this R&R, DeLima has not stated any claim upon which relief might be granted in the FAC. Accordingly, DeLima cannot demonstrate a likelihood of success on the merits of any claim in this action, and the district judge should deny DeLima's motions for preliminary injunctive relief (Doc. Nos. 3, 5-8, 11, 17, 29) on that basis.

### Pending Motions to Dismiss and/or for Summary Judgment and Motion to Stay Proceedings

The court has taken under advisement motions to dismiss and/or for summary judgment (Doc. Nos. 27, 28, 56, 60, 95, 96, 123) which defendants have filed in this case. Defendants have also filed a motion to stay proceedings (Doc. No. 97) in this case pending resolution of the defendants' motions to dismiss and/or for summary judgment. Upon approval of this R&R, the court should deny each of those motions as moot.

### Conclusion

For the foregoing reasons, the district judge should dismiss the FAC (Doc. No. 131) in its entirety, deny DeLima's requests for preliminary injunctive relief (Doc. Nos. 1, 3, 5-8, 11, 17, 29), and deny as moot defendants' motions to dismiss and/or for summary judgment (Doc. Nos. 27, 28, 56, 60, 95, 96, 123) and to stay proceedings (Doc. No. 97). Any objections to this R&R must be filed within fourteen days of receipt of this

notice. See Fed. R. Civ. P. 72(b)(2). The fourteen-day period may be extended upon motion. Failure to file specific written objections to the R&R within the specified time waives the right to appeal the district court's order. See Santos-Santos v. Torres-Centeno, 842 F.3d 163, 168 (1st Cir. 2016); Fed. R. Civ. P. 72(b)(2).

*Andrea K. Johnstone*

Andrea K. Johnstone
United States Magistrate Judge

August 30, 2018

cc: Natasha DeLima, pro se
    Timothy John McLaughlin, Esq.
    Matan Schacham, Esq.
    Travis Silva, Esq.
    Joseph H. Aronson, Esq.
    Stephen J. Soule, Esq.
    Nolan C. Burkhouse, Esq.